**UNITED STATED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| LEE M. NIGEN, | : | |
| Plaintiff, | : | CV_____ |
| | : | |
| v. | : | |
| | : | |
| STATE OF NEW YORK; and ANDREW | : | |
| CUOMO, sued in his official capacity; | : | |
| | : | |
| Defendants. | : | MARCH 25, 2020 |

## COMPLAINT

1.      This is an action for declaratory and injunctive relief under 42 U.S.C. § 1983 against the State of New York and Governor Andrew Cuomo in his official capacity for violations of the Plaintiff's rights to move freely under Article IV, Section 2 of the United States Constitution, the Due Process Clause of the Fifth Amendment to the United States Constitution, and the Ninth Amendment to the United States Constitution; and for violations of the Plaintiffs' rights to religious freedom, free speech, and freedom of association under the First, Fifth, and Ninth Amendments to the United States Constitution and Article IV, Section 2 of the United States Constitution.

## Jurisdiction

2.      The Court properly possesses jurisdiction on federal question grounds. Venue is appropriate as the alleged unconstitutional acts of the Defendants apply and occur in the Eastern District of New York. The Claim arises under 42 U.S.C. § 1983.

## Parties

3.      Lee M. Nigen is an adult resident of Brooklyn, New York.

4.      Andrew Cuomo is the governor of the State of New York. He is sued in his official capacity alone.

5.      The State of New York is a state of the United States.

**CORONAVIRUS REARS ITS HEAD & CREATES A NATIONAL EMERGENCY**

6.      On December 31, 2019, the Chinese government confirmed that health authorities were treating dozens of cases of a new and unknown virus that was infecting multiple people. This virus later came to be popularly known as coronavirus.

7.      On January 11, 2020, Chinese state media announced the death of the first person from coronavirus.

8.      On January 21, 2020, Washington State officials confirmed the first case of coronavirus in the United States.

9.      Due to coronavirus' rapid spread, the World Health Organization declared a global health emergency on January 30, 2020, and the United States State Department warned travelers to avoid China.

10.     On January 31, 2020, President Trump issued an international travel ban on any foreign national who had traveled to China in the past fourteen days, excluding the immediate family members of American citizens or other lawful permanent residents.

11.     Over the month of February, 2020, the coronavirus spread across the world with a global case number of 76,000 by February 20, 2020.

12.     On February 29, 2020, the United States officially confirmed its first death from coronavirus in Washington State.

13.     On March 13, 2020, President Trump officially declared a national emergency due to coronavirus.

14.     On March 20, 2020, Andrew Cuomo, the governor of the state of New York, issued an executive order commanding all businesses that he deemed to be non-essential to close. *See* **Exhibit A**, p. 2.

15.     On March 23, 2020, Mr. Cuomo issued an executive order indefinitely canceling all gatherings of individuals of any size for any purpose that he deemed non-essential. *See* **Exhibit B,** p. 4.

16.     Furthermore, while he did not officially issue an order against travel, Mr. Cuomo warned New York residents not to travel unless it was absolutely necessary, saying that it would be enforced.

## THE DEFENDANTS' ORDER PREVENTS THE PLAINTIFF FROM EXERCISING HIS CONSTITUTIONAL RIGHTS

17.     The Plaintiff, Mr. Lee M. Nigen, is a lawyer and concerned citizen.

18.     He regularly travels in and out of New York City to meet the needs of his clients.

19.     He also travels around New York City and to other areas of the state and country to visit his friends and family and meet with likeminded people.

20.     The Defendants' order prevents him from legally exercising his rights to freedom of speech, freedom of assembly, and freedom of association.

21.     The Defendants' order prevents him from operating his law practice, thus infringing on his constitutional right to pursue his livelihood.

22.     Mr. Nigen is also a devout Jew who regularly gathers with other members of his faith to practice their religious traditions as required by their faith.

23.     The Defendants' order acts as an absolute bar to the Defendants' right to freely exercise their religion.

## MR. CUOMO'S WORDS SERVE AS A CONSTITUTIONALLY IMPERMISSIBLE CHILL ON THE PLAINTIFF BY DISCOURAGING HIM FROM TRAVELING

24.     Mr. Nigen regularly travels in and out of New York City to meet the needs of his clients.

25.     Mr. Nigen also travels around New York City and to other areas of the state and country to visit his friends and family and meet with likeminded people.

26.     Mr. Cuomo's words cause Mr. Nigen to doubt whether he can legally travel for any purposes other than getting medical attention or obtaining groceries, thus impermissibly chilling his exercise of his constitutional rights to travel.

27.     Mr. Cuomo's threat that his directives will be enforced by law enforcement cause Mr. Nigen to fear arrest if he attempts to travel for any other purpose other than getting medical attention or obtaining groceries, thus impermissibly chilling his exercise of his constitutional rights to travel.

## COUNT ONE – VIOLATION OF RIGHT TO MOVE FREELY UNDER ARTICLE IV, SECTION 2 OF THE UNITED STATES CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

28.     Paragraphs 1 through 27 are hereby incorporated within this count.

29.     The Plaintiff has a right to move freely through the United States under the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution. *See Saenz v. Roe*, 526 U.S. 489 (1999).

30.     The Plaintiff has a right to move freely through the United States under the Privileges Or Immunities Clause of the Fourteenth Amendment of the United States Constitution.

31.     The Defendants' words impermissibly chill Mr. Nigen's exercise of his constitutional right to freely move through the United States.

## COUNT TWO – VIOLATION OF RIGHT TO MOVE FREELY UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

32.     Paragraphs 1 through 31 are hereby incorporated within this count.

33.     The Plaintiff has a right to move freely through the United States under the Due Process Clause of the Fifth Amendment to the United States Constitution.

34.     The Plaintiff has a right to move freely through the United States under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

35.     The Defendants' words impermissibly chill Mr. Nigen's exercise of his constitutional right to freely move through the United States.

## COUNT THREE – VIOLATION OF RIGHT TO MOVE FREELY UNDER THE NINTH AMENDMENT TO THE UNITED STATES CONSTITUTION

36.     Paragraphs 1 through 35 are hereby incorporated within this count.

37.     The Plaintiff has a right to move freely through the United States under the 9th Amendment to the United States Constitution.

38.     The Defendants' order violates and/or excessively burdens the Plaintiff's constitutional right to freely move through the United States.

## COUNT FOUR – VIOLATION OF RIGHT TO FREE SPEECH UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

39.     Paragraphs 1 through 38 are hereby incorporated within this count.

40.     The Plaintiff regularly travels around New York City, to other areas of the state, and to other states to visit his friends, family, and clients and to meet with likeminded people.

41.     The Defendants' order violates and/or excessively burdens the Plaintiff's constitutional right to speak freely to people.

## COUNT FIVE – VIOLATION OF RIGHT TO FREEDOM OF ASSOCIATION

42.     Paragraphs 1 through 41 are hereby incorporated within the count.

43.     The Plaintiff is a lawyer and a concerned citizen. He regularly travel around New York City, to other areas of the state, and to other states to visit his friends, family, and clients and to meet with likeminded people.

44.     The Defendants' order violates and/or excessively burdens the Plaintiff's right to freedom of association under the First Amendment to the United States Constitution by preventing him from traveling to associate with his friends and family. In addition, the Defendants' order violates and/or excessively burdens Mr. Nigen's right to freedom of association by preventing him from meeting with members of his Jewish faith as his religious tradition requires.

45.     The Defendants' order violates and/or excessively burdens the Plaintiff's right to freedom of association under the Fifth Amendment to the United States Constitution by preventing him from traveling to associate with his friends and family. In addition, the Defendants' order violates and/or excessively burdens Mr. Nigen's right to freedom of association by preventing him from meeting with members of his Jewish faith as his religious tradition requires.

46.     The Defendants' order violates and/or excessively burdens the Plaintiff's right to freedom of association under the Ninth Amendment to the United States Constitution by preventing him from traveling to associate with his friends and family. In addition, the Defendants' order violates and/or excessively burdens Mr. Nigen's right to freedom of association by preventing him from meeting with members of his Jewish faith as his religious tradition requires.

47.     The Defendants' order violates and/or excessively burdens the Plaintiff's right to freedom of association under the Fourteenth Amendment to the United States Constitution by preventing him from traveling to associate with his friends and family. In addition, the Defendants' order violates and/or excessively burdens Mr. Nigen's right to freedom of association by preventing him from meeting with members of his Jewish faith as his religious tradition requires.

48.     The Defendants' order violates and/or excessively burdens the Plaintiff's right to freedom of association under the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution by preventing him from traveling to associate with his friends and family. In addition, the Defendants' order violates and/or excessively burdens Mr. Nigen's right to freedom of association by preventing him from meeting with members of his Jewish faith as his religious tradition requires.

## COUNT SIX – VIOLATION OF RIGHT TO FREE EXERCISE OF RELIGION

49.     Paragraphs 1 through 48 are hereby incorporated within the count.

50.     Mr. Nigen is a devout Jew and regularly practices his faith.

51.     Mr. Nigen's Jewish religious tradition requires that he meet with other members of his faith for readings of the Torah.

52.     The Defendants' order violates and/or excessively Mr. Nigen's right to freely exercise his religion under the First Amendment to the United States Constitution by preventing him from meeting with members of his Jewish faith as his religious tradition requires.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff asks the Court to:

- Declare the Defendants' Order unconstitutional;

- Issue a permanent injunction enjoining the enforcement of the Defendants' order unconstitutional; and

- Any other relief that the Court deems proper.

THE PLAINTIFF

By: /s/ Norman A. Pattis /s/
    NORMAN A. PATTIS
    PATTIS & SMITH, LLC
    383 Orange Street, 1st Fl.
    New Haven, CT 06511
    T: (203) 393-3017
    F: (203) 393-9745
    npattis@pattislaw.com
    Federal Bar No.: pattis2

## CERTIFICATE OF SERVICE

I hereby certify that, on the date above, a copy of the foregoing was served by certified mail and fax upon New York State Attorney General at the Brooklyn Regional Office pursuant to the requirements of Federal Rule of Civil Procedure 4 and New York CPLR 307. I hereby also certify that, on the date above, a copy of the foregoing was served by certified mail upon Governor Andrew Cuomo pursuant to the requirements of Federal Rule of Civil Procedure 4 and New York CPLR 307.

/s/ Norman A. Pattis /s/
NORMAN A. PATTIS

# Exhibit A



No. 202.8

E X E C U T I V E   O R D E R

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS,** on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

**WHEREAS,** both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**WHEREAS,** in order to facilitate the most timely and effective response to the COVID-19 emergency disaster, it is critical for New York State to be able to act quickly to gather, coordinate, and deploy goods, services, professionals, and volunteers of all kinds; and

**NOW, THEREFORE,** I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 19, 2020 the following:

- In accordance with the directive of the Chief Judge of the State to limit court operations to essential matters during the pendency of the COVID-19 health crisis, any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including but not limited to the criminal procedure law, the family court act, the civil practice law and rules, the court of claims act, the surrogate's court procedure act, and the uniform court acts, or by any other statute, local law, ordinance, order, rule, or regulation, or part thereof, is hereby tolled from the date of this executive order until April 19, 2020;
- Subdivision 1 of Section 503 of the Vehicle and Traffic Law, to the extent that it provides for a period of validity and expiration of a driver's license, in order to extend for the duration of this executive order the validity of driver's licenses that expire on or after March 1, 2020;
- Subdivision 1 of Section 491 of the Vehicle and Traffic Law, to the extent that it provides for a period of validity and expiration of a non-driver identification card, in order to extend for the duration of this executive order the validity of non-driver identification cards that expire on or after March 1, 2020;
- Sections 401, 410, 2222, 2251, 2261, and 2282(4) of the Vehicle and Traffic law, to the extent that it provides for a period of validity and expiration of a registration certificate or number plate for a motor vehicle or trailer, a motorcycle, a snowmobile, a vessel, a limited use vehicle, and an all-terrain vehicle, respectively, in order to extend for the duration of this executive order the validity of

- The provisions of Executive Order 202.6 are hereby modified to read as follows: Effective on March 22 at 8 p.m.: All businesses and not-for-profit entities in the state shall utilize, to the maximum extent possible, any telecommuting or work from home procedures that they can safely utilize. Each employer shall reduce the in-person workforce at any work locations by 100% no later than March 22 at 8 p.m. Any essential business or entity providing essential services or functions shall not be subject to the in-person restrictions. An entity providing essential services or functions whether to an essential business or a non-essential business shall not be subjected to the in-person work restriction, but may operate at the level necessary to provide such service or function. Any business violating the above order shall be subject to enforcement as if this were a violation of an order pursuant to section 12 of the Public Health Law.

- There shall be no enforcement of either an eviction of any tenant residential or commercial, or a foreclosure of any residential or commercial property for a period of ninety days.

- Effective at 8 p.m. March 20, any appointment that is in-person at any state or county department of motor vehicles is cancelled, and until further notice, only on-line transactions will be permitted.

- The authority of the Commissioner of Taxation and Finance to abate late filing and payment penalties pursuant to section 1145 of the Tax Law is hereby expanded to also authorize abatement of interest, for a period of 60 days for a taxpayers who are required to file returns and remit sales and use taxes by March 20, 2020, for the sales tax quarterly period that ended February 29, 2020.



G I V E N  under my hand and the Privy Seal of the

State in the City of Albany this

twentieth day of March in the year

two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor

# Exhibit B



No. 202.10

E X E C U T I V E   O R D E R

Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency

WHEREAS, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

WHEREAS, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

WHEREAS, ensuring the State of New York has adequate bed capacity, supplies, and providers to treat patients affected with COVID-19, as well as patients afflicted with other maladies, is of critical importance; and

WHEREAS, eliminating any obstacle to the provision of supplies and medical treatment is necessary to ensure the New York healthcare system has adequate capacity to provide care to all who need it;

NOW, THEREFORE, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 22, 2020 the following:

- Section 2803 of the Public Health Law, and Parts 400, 401, 405, 409, 710, 711 and 712 of Title 10 of the NYCRR, to the extent necessary to permit and require general hospitals to take all measures necessary to increase the number of beds available to patients, in accordance with the directives set forth in this Executive Order;

- Section 3001, 3005-a, 3008, and 3010 of the Public Health Law to the extent necessary to modify the definition of "emergency medical services" to include emergency, non-emergency and low acuity medical assistance; to eliminate any restrictions on an approved ambulance services or providers operating outside of the primary territory listed on such ambulance service's operating certificate with prior approval by the Department of Health; to permit the Commissioner of Health to issue provisional emergency medical services provider certifications to qualified individuals with modified certification periods as approved; and to allow emergency medical services to transport patients to locations other than healthcare facilities with prior approval by Department of Health;

- Section 3002, 3002-a, 3003, and 3004-a of Public Health Law to the extent necessary to allow any emergency medical treatment protocol development or modification to occur solely with the approval of the Commissioner of Health;

- Paragraph 1 of Section 6549 of the Education Law and Subdivisions (a) and (b) of Section 94.2 of Title 10 of the NYCRR to the extent necessary to permit a specialist assistant to provide medical services appropriate to their education, training and experience without oversight from a supervising physician without civil or criminal penalty related to a lack of oversight by a supervising physician;

- Subdivision (3) of Section 6902 of Education Law, and any associated regulations, including, but not limited to, Section 64.5 of Title 10 of the NYCRR, to the extent necessary to permit a nurse practitioner to provide medical services appropriate to their education, training and experience, without a written practice agreement, or collaborative relationship with a physician, without civil or criminal penalty related to a lack of written practice agreement, or collaborative relationship, with a physician;

- Subdivision (15) of section 3001, and Sections 800.3, 800.15 and 800.16 of Title 10 of the NYCRR with approval of the department, to the extent necessary to define "medical control" to include emergency and non-emergency direction to all emergency medical services personnel by a regional or state medical control center and to permit emergency medical services personnel to operate under the advice and direction of a nurse practitioner, physician assistant, or paramedic, provided that such medical professional is providing care under the supervision of a physician and pursuant to a plan approved by the Department of Health;

- Subdivision (2) of section 6527, Section 6545, and Subdivision (1) of Section 6909 of the Education Law, to the extent necessary to provide that all physicians, physician assistants, specialist assistants, nurse practitioners, licensed registered professional nurses and licensed practical nurses shall be immune from civil liability for any injury or death alleged to have been sustained directly as a result of an act or omission by such medical professional in the course of providing medical services in support of the State's response to the COVID-19 outbreak, unless it is established that such injury or death was caused by the gross negligence of such medical professional;

- Any healthcare facility is authorized to allow students, in programs to become licensed in New York State to practice as a healthcare professional, to volunteer at the healthcare facility for educational credit as if the student had secured a placement under a clinical affiliation agreement, without entering into any such clinical affiliation agreement;

- Notwithstanding any law or regulation to the contrary, health care providers are relieved of recordkeeping requirements to the extent necessary for health care providers to perform tasks as may be necessary to respond to the COVID-19 outbreak, including, but not limited to, requirements to maintain medical records that accurately reflect the evaluation and treatment of patients, or requirements to assign diagnostic codes or to create or maintain other records for billing purposes. Any person acting reasonably and in good faith under this provision shall be afforded absolute immunity from liability for any failure to comply with any recordkeeping requirement. In order to protect from liability any person acting reasonably and in good faith under this provision, requirements to maintain medical records under Subdivision 32 of Section 6530 of the Education Law, Paragraph (3) of Subdivision (a) of Section 29.2 of Title 8 of the NYCRR, and Sections 58-1.11, 405.10, and 415.22 of Title 10 of the NYCRR, or any other such laws or regulations are suspended or modified to the extent necessary for health care providers to perform tasks as may be necessary to respond to the COVID-19 outbreak;

- Section 405.45 of Title 10 of the NYCRR to the extent necessary to permit the Commissioner of Health to designate a health care facility as a trauma center, or extend or modify the period for which a health care facility may be designated as a trauma center, or modify the review team for assessment of trauma center;

- Sections 800.3, 800.8, 800.9, 800.10, 800.12, 800.17, 800.18, 800.23, 800.24, and 800.26 of Title 10 of the NYCRR to the extent necessary to extend all existing emergency medical services provider certifications for one year; to permit the Commissioner of Health to modify the examination or recertification requirements for emergency medical services provider certifications; to suspend or modify, at the discretion of the Commissioner of Health, any requirements for the recertification of previously certified emergency medical services providers; and, at the discretion of the Commissioner of Health, develop a process determined by the Department of Health, to permit any emergency medical services provider certified or licensed by another State to provide emergency medical services within New York state; at the discretion of the Commissioner of Health, to suspend or modify equipment or vehicle requirements in order to ensure sustainability of EMS operations;

education;

- Subdivision (e) of section 405.2 of Title 10 of the NYCRR, to the extent necessary to permit general hospitals affected by the disaster emergency to maintain adequate staffing;

- Subdivision (b) of section 405.3 of Title 10 of the NYCRR, to the extent necessary to allow general hospitals to use qualified volunteers or personnel affiliated with different general hospitals, subject to the terms and conditions established by the Commissioner of Health;

- Section 3507 of the Public Health Law and Part 89 of Title 10 of the NYCRR to the extent necessary to permit radiologic technologists licensed and in current good standing in New York State but not registered in New York State to practice in New York State without civil or criminal penalty related to lack of registration;

- Sections 3502 and 3505 of the Public Health Law and Part 89 of Title 10 of the NYCRR to the extent necessary to permit radiologic technologists licensed and in current good standing in any state in the United State to practice in New York State without civil or criminal penalty related to lack of licensure;

- Sections 8502, 8504, 8504-a, 8505, and 8507 of the Education Law and Subpart 79-4 of Title 8 of the NYCRR, to the extent necessary to allow respiratory therapists licensed and in current good standing in any state in the United States to practice in New York State without civil or criminal penalty related to lack of licensure;

- Section 6502 of the Education Law and 8 NYCRR 59.8, to the extent necessary to allow physician's assistants licensed and in current good standing in New York State but not registered in New York State to practice in New York State without civil or criminal penalty related to lack of registration;

- Section 6502 of the Education Law and 8 NYCRR 59.8, to the extent necessary to allow registered professional nurses, licensed practical nurses and nurse practitioners licensed and in current good standing in New York State but not registered in New York State to practice in New York State without civil or criminal penalty related to lack of registration;

- Subdivision (2-b) of Section 4002 of the Public Health Law to the extent necessary to allow a hospice residence to designate any number of beds within such facility as dually certified inpatient beds;

- Title V of Article 5 of the Public Health Law and subparts 19 and 58 of Title 10 of the NYCRR, to the extent necessary to allow laboratories holding a Clinical Laboratory Improvement Acts (CLIA) certificate and meeting the CLIA quality standards described in 42 CFR Subparts H, J, K and M, to perform testing for the detection of SARS-CoV-2 in specimens collected from individuals suspected of suffering from a COVID-19 infection;

- Article 139 of the Education Law, Section 576-b of the Public Health Law and Section 58-1.7 of Title 10 of the NYCRR, to the extent necessary to permit registered nurses to order the collection of throat or nasopharyngeal swab specimens from individuals suspected of being infected by COVID-19, for purposes of testing; and

- Subdivision (1) of Section 6801 of the Education Law, Section 6832 of the Education Law and Section 29.7(a)(21)(ii)(b)(4) of Title 8 of the NYCRR, to the extent necessary to permit a certified or registered pharmacy technician, under the direct personal supervision of a licensed pharmacist, to assist such licensed pharmacist, as directed, in compounding, preparing, labeling, or dispensing of drugs used to fill valid prescriptions or medication orders for a home infusion provider licensed as a pharmacy in New York, compliant with the United States Pharmacopeia General Chapter 797 standards for Pharmaceutical Compounding -- sterile preparations, and providing home infusion services through a home care agency licensed under Article 36 of the Public Health Law.

IN ADDITION, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through April 22, 2020:

- Any healthcare facility is authorized to allow students, in programs to become licensed in New York

determined by NYSDOH, to accomplish this purpose;

- The Commissioner of Health is authorized to suspend or revoke the operating certificate of any general hospital should they be unable to meet the requirements of the necessary capacity directives; and notwithstanding any law to the contrary the Commissioner may appoint a receiver to continue the operations on 24 hours' notice to the current operator, in order to preserve the life, health and safety of the people of the State of New York.

- No pharmacist shall dispense hydroxychloroquine or chloroquine except when written as prescribed for an FDA-approved indication; or as part of a state approved clinical trial related to COVID-19 for a patient who has tested positive for COVID-19, with such test result documented as part of the prescription. No other experimental or prophylactic use shall be permitted, and any permitted prescription is limited to one fourteen day prescription with no refills.

- Any licensed health insurance company shall deliver to the Superintendent, no later than March 24, 2020 a list of all persons who have a professional licensure or degree, whether physician's assistant, medical doctor, licensed registered nurse, licensed nurse practitioner or licensed practical nurse, and whether or not the person has a currently valid, or recently (within past five years) expired license in the state of New York. The Department of Financial Services shall poll such individuals to determine whether or not such professionals would serve in the COVID-19 response effort.

- Non-essential gatherings of individuals of any size for any reason (e.g. parties, celebrations or other social events) are canceled or postponed at this time.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this twenty-

third day of March in the year two

thousand twenty.

BY THE GOVERNOR

Secretary to the Governor